Richard MUNIZ, Petitioner,

v.

David L. WINN, Warden, Federal Medical Center, Devens, Respondent.

Victor J. Gonzalez, Petitioner,

v.

David L. Winn, Warden, Federal Medical Center, Devens, Respondent.

Civil Action Nos. 06–40162–WGY, 06–40173–WGY.

United States District Court, D. Massachusetts.

Nov. 21, 2006.

Mark J. Grady United States Attorney's Office, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

There are at least two dozen petitions for habeas corpus pending in this District that challenge the Bureau of Prisons' ("BOP") regulations and practice regarding placement in community corrections centers ("CCC"), commonly known as halfway houses.[1] Each asserts substantially the same reasoning and authority and the

---

1. *See, e.g., Stromberg v. Winn*, 06–40067–RCL (filed 4/10/2006); *Choquette v. Winn*, 06–11292–PBS (filed 7/27/2006); *Homsy v. Winn*, 06–40152–MLW (filed 8/2/2006); *Compton v. Winn*, 06–40161–DPW (filed 8/7/2006); *Hirshout v. Winn*, 06–40191–NMG; *Gonzalez v. Winn*, 06–40172–NG (filed 8/18/2006).

government responses are identical. This Memorandum and Order will consider specifically the two such petitions pending before this Court. It does so by echoing the conclusions and reasoning of all of the Courts of Appeals to consider the issue, *Levine v. Apker*, 455 F.3d 71 (2d Cir.2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir.2005), as well as certain of the decisions of other judges in this District, *compare Putnam v. Winn*, 441 F.Supp.2d 253 (D.Mass.2006) (Saris, J.), *Tahajian v. Winn*, No. 06–11134, Order, September, 25, 2006 [Doc. No. 12] (Tauro, J.), *and Perez v. Winn*, No. 06–40194, Order, October 25, 2006 [Doc. No. 6] (Ponsor, J.) *with Coviello v. Winn*, No. 06–40072, Order, November 8, 2006 [Doc. No. 12] (Gorton, J.) *and Bullock v. Winn*, No. 06–40147, Order, November 13, 2006 [Doc. No. 17] (Saylor, J.). This Court thus offers a full discussion of the issues in an effort to provide guidance to BOP officials operating within the District and with the hope that this flurry of indistinguishable habeas petitions may subside.

## I. INTRODUCTION

The two petitions pending before this Court are substantially the same. Both petitioners contend that they should immediately be evaluated for placement in a CCC pursuant to BOP policies that existed prior to a change in 2002 that categorically excluded CCC placements before the later of ten percent or six months remaining in a term of imprisonment.

### A. Richard Muniz

Petitioner Richard Muniz ("Muniz") is currently serving a thirty month sentence at the Federal Medical Center at Fort Devens in Ayer, Massachusetts ("FMC–

Devens") for conspiracy to commit wire fraud. Resp't Mem. in Supp. of Mot. to Dismiss [Doc. No. 4] ("Muniz Mem.") at 1. Muniz's projected release date is December 24, 2007.[2] *Id.* Muniz contends that he has been advised that his placement in a CCC under current policies will be October 7, 2007. Pet. for a Writ of Habeas Corpus Under 28 U.S.C. §§ 2241 & 2243 [Doc. No. 1] ("Muniz Pet.") at 2. Respondent, however, states that Muniz has not yet been considered for placement in a CCC, in accordance with its current policies. Muniz Mem. at 1. Muniz further contends that an evaluation pursuant to pre–2002 policies would have provided him a chance at a CCC placement on June 24, 2007. Muniz Pet. at 2.

At the hearing on October 31, 2006, this Court granted Muniz's petition and ordered Respondent to evaluate Muniz's placement within ten days based on the pre–2002 policies.

### B. Victor J. Gonzalez

Petitioner Victor J. Gonzalez ("Gonzalez") is serving a sixty-three month term at FMC–Devens. Resp't Mem. in Supp. of Mot. to Dismiss [Doc. No. 6] ("Gonzalez Mem.") at 1. He was convicted of conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine. *Id.* His projected release date is August 31, 2008[3], and Respondent states that he has not yet been evaluated for a CCC placement. *Id.* Gonzalez contends that he has been advised that he will be placed in a CCC on March 18, 2008 but that an evaluation for placement based on pre–2002 policies would give him a chance at a CCC placement on February 17, 2008. Pet. for a Writ of Habeas Corpus Under

---

**2.** This date assumes the application of all available good conduct time.

**3.** Again assuming the application of all available good conduct time.

28 U.S.C. §§ 2241 & 2243 [Doc. No. 1] ("Gonzalez Pet.") at 2.

## II. DISCUSSION

### A. Background

Two statutes govern the authority of the BOP to place and transfer federal prisoners: (1) 18 U.S.C. § 3621(b)[4]; and (2) 18 U.S.C. § 3624(c)[5].

Section 3621(b) directs the BOP to designate the place of imprisonment for prisoners committed to its custody under Section 3621(a) and provides some limited authority to make the placement decision. Section 3624(c) mandates that the BOP consider placement designations during the last six months or ten percent of a sentence that ease the transition from incarceration into the community.

Prior to December 2002, the BOP interpreted Section 3624(c) as creating an obligation with respect to the last ten percent of a sentence, but otherwise placing no limitations on the BOP's discretion to place prisoners under Section 3621(b). *Levine*, 455 F.3d at 75. The BOP regularly placed prisoners in CCCs for greater than the statutory mandate of Section 3624(c), notably for the entirety of some inmates' terms, in the case of short sentences. *Iacaboni v. United States*, 251 F.Supp.2d 1015, 1022 (D.Mass.2003) (Ponsor, J.).

In December 2002, the Department of Justice's Office of Legal Counsel, acting as legal counsel to the BOP, advised that this interpretation was invalid and illegal. *See Pereira v. Winn*, No. 03–40139 (Gertner, J.), Mem. Re: Bureau of Prisons' New Community Confinement Policy [Doc. No. 8] ("Gertner Mem.") at 1–3 (detailing "overnight shift in policy"); *see also Iacaboni*, 251 F.Supp.2d at 1023 (addressing "gossip" as to the motives behind the sudden policy shift).[6] As such, the BOP was ad-

---

4. Place of imprisonment.-The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
　(1) the resources of the facility contemplated;
　(2) the nature and circumstances of the offense;
　(3) the history and characteristics of the prisoner;
　(4) any statement by the court that imposed the sentence—
　　(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
　　(B) recommending a type of penal or correctional facility as appropriate
　(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. . . .
18 U.S.C. § 3621(b)

5. Pre-release custody.-The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. . . .

18 U.S.C. § 3624(c).

6. Judge Ponsor observes that the motivation behind this policy shift may have been to curb the practice of doling out softer punishments to white-collar criminals—an ironic basis considering the adverse effect the policy is having on "defendants ... of the distinctly grimy collared variety." *See Iacaboni*, 251 F.Supp.2d at 1023.

vised that it could no longer consider CCC placement for inmates prior to the last six months or ten percent of a sentence. *Id.*

Courts have roundly rejected this interpretation as legally invalid. *See, e.g., Goldings v. Winn,* 383 F.3d 17 (1st Cir. 2004); *Iacaboni,* 251 F.Supp.2d at 1015; *see also Levine,* 455 F.3d at 75 (detailing history of post–2002 litigation challenging this interpretation). Thus, nothing in Section 3624(c) limited the exercise of the BOP's discretion with respect to placement or transfer of inmates prior to the last ten percent of a sentence. *Goldings,* 383 F.3d at 24.

In response to this rejection, the BOP adopted a set of rules in January, 2005 adopting much the same policy but anchoring it to a different theory. *Levine,* 455 F.3d at 75–76; *see also* Muniz Mem. at 5. The BOP reasoned that its discretion, which it had disclaimed under the 2002 policy change, was broad enough to allow it categorically to exclude all inmates from consideration from placement in CCCs prior to the last ten percent of a sentence. *Levine,* 455 F.3d at 75–76. The new rules stated, "the [BOP] will designate inmates to community confinement only as part of pre-release custody and programming during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21. The BOP claims that it was not compelled to utilize the five factors for consideration listed in Section 3621(b) when developing the regulation. Muniz Mem. at 11 (stating that the use of factors falls within discretionary authority); *Woodall,* 432 F.3d at 244 (discussing the argument that placement factors are not mandatory). Alternatively, the BOP contends that it *has* considered the factors in the drafting of the rules, and that the categorical exclusion reflects its judgment with respect to the factors. Muniz Mem. at 16; *see also Levine,* 455

F.3d at 85 n. 10 (stating and dismissing the BOP contention).

This attempt to reinstate, under a different guise, the 2002 policy change triggered an onslaught of activity in federal courts, challenging its validity. *See Woodall,* 432 F.3d at 244 nn. 9 & 10 (collecting district court cases). District courts were initially divided on the new regulations, but the Second, Third, and Eighth Circuits have held that this, too, is an invalid statutory interpretation. *Levine,* 455 F.3d at 87; *Fults,* 442 F.3d at 1092; *Woodall,* 432 F.3d at 251. These courts held that the BOP interpretation was contrary to legislative intent. *Levine,* 455 F.3d at 87. No Court of Appeals has held to the contrary. *See id.* at 76. Further, this district has, until very recently, strongly and consistently adopted the reasoning put forth in these cases, especially, *Woodall* and *Fults.* *See, Putnam,* 441 F.Supp.2d at 258 (adopting reasoning of *Woodall* and *Fults); Tahajian,* No. 06–11134 (adopting Magistrate Judge Collings' Report and Recommendation following Judge Saris's opinion in *Putnam); Perez,* No. 06–40194 (following *Putnam* also). But see *Coviello,* No. 06–40072 (accepting BOP interpretation); *Bullock,* No. 06–40147 (same). This Court has carefully and respectfully reviewed all of these decisions but embarks on the following discussion in an attempt to make clear its own reasoning.

## B. Jurisdiction

As a challenge to the manner in which the Petitioners' prison sentences are administered, jurisdiction is proper under Title 28, Section 2241 of the United States Code to review the "execution" of the sentence. *See Putnam,* 441 F.Supp.2d at 254–55; *Levine,* 455 F.3d at 78; *Woodall,* 432 F.3d at 241–243. Respondent does not challenge this Court's jurisdiction.

## C. Review of Administrative Agency Interpretation

 Respondent correctly notes that judicial review of an administrative agency's statutory interpretation must provide deference to the agency's interpretation in the case of ambiguity or silence. Muniz Mem. at 6; *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Where the statute is clear, however, this Court must scrutinize an agency interpretation against the expressed intent of Congress. *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778 ("The judiciary is the final authority on issues of statutory construction and must reject . . . constructions which are contrary to clear congressional intent."). This Court is not convinced by the Respondent that there are ambiguities in the relevant statutes that need be resolved by the BOP and granted deference here. *See Goldings*, 383 F.3d at 28; *Woodall*, 432 F.3d at 248–49 (explaining that the BOP interpretation is not only imprudent, but would fail even under a deferential analysis).

## D. Are Section 3621(b) Factors Mandatory?

 Respondent relies heavily on the use of the word "may" within Section 3621(b)—"The Bureau *may* designate any available penal or correctional facility . . ."—to support its position that Congress's grant of authority is not subject to the mandatory consideration of the five statutory factors. Muniz Mem. at 11.[7] While Respondent states that it is "plain" what this choice of word implies, it proffers no actual arguments in support. *Id.*

On the contrary, when the provision is read holistically, it is plain that the word "may" operates in concert with the word "any," granting broad discretion to the BOP to "designate *any* available penal or correctional facility . . . that the [BOP] considers to be appropriate and suitable." It is only at the end of this clause that the five factors are listed, providing a limit on the BOP's judgment of what is "appropriate and suitable" by use of the word "considering." *Levine*, 455 F.3d at 81. As the Second Circuit observed, "[i]f Congress had rested [after 'suitable'], the BOP would have been left with unguided discretion . . . [b]ut Congress was not silent on the criteria for placing a prisoner in an 'appropriate and suitable' facility." *Levine*, 455 F.3d at 81; *see also Woodall*, 432 F.3d at 245 (observing that the "word 'may' is a full fifty words away from the considerations, and its effect is separated from the factors with a comma."). "[T]he statute indicates that the BOP *may* place a prisoner where it wishes, *so long as* it considers the factors enumerated." *Woodall*, 432 F.3d at 245 (emphasis in original); *accord Levine*, 455 F.3d at 82; *Fults*, 442 F.3d at 1092.[8]

Any attempt to utilize the word "may" as modifying the list of considerations is simply an effort to create an ambiguity

---

7. As stated, the Respondent's memoranda in response to both petitions are identical in their legal arguments. For simplicity, only one Response will be cited in the Court's discussion.

8. Because the meaning of this provision is plain, there is no need to rummage behind the words into the legislative history. Even so, here the history is in accordance with the express language. Most persuasively, as prior courts have observed, the Senate Committee Report on the placement factors states, "[i]n determining the availability or suitability of the facility selected, the Bureau [is] *specifically required* to consider such factors as [those listed in § 3621(b)]." *See Levine*, 455 F.3d at 82; *Woodall*, 432 F.3d at 245; *see also Goldings*, 383 F.3d at 30–32 (Howard, J. concurring) (considering but ultimately dismissing *subsequent* legislative history to the contrary).

where none exists. The statute is clear—the five factors provided in Section 3621(b) *must* be considered by the BOP when designating an appropriate place of imprisonment for an inmate. It is not appropriate to describe Section 3621(b) as only limiting the BOP *if* it chooses to act; it must act to select a place of imprisonment for each inmate, and it is required to consider the five factors that Congress enumerated. *See Fults*, 442 F.3d at 1092 ("[A] decision to not transfer an inmate . . . requires the same consideration of the . . . factors."). *Contra Woodall*, 432 F.3d at 251–52 (Fuentes, J. dissenting).[9]

### E. May the BOP Categorically Exclude Placement in CCCs?

#### 1. Authority To Make a Categorical Rule

If the five placement factors are mandatory, then the BOP does not have the discretion to create a categorical rule that forecloses any evaluation of those factors (prior to the pre-release custody obligations imposed by Section 3624(c)). *See Levine*, 455 F.3d at 85–86 (discussing inconsistency of mandatory factors and categorical rule-making). To counteract this, the BOP claims that it *has* considered the factors when creating the categorical exclusion. Muniz Mem. at 16; *Coviello*, No. 06–40072, at 13. (accepting BOP contention). This is unconvincing, however, considering the nature of the factors. It is illogical to say that a blanket rule limiting certain placements has considered, or will consider, "the . . . circumstances of the

offense," "the history and characteristics of the prisoner," or "any statement by the court that imposed the sentence." *See Levine*, 455 F.3d at 86 (discussing individualized nature of these three factors); 28 U.S.C. § 3621(b). These factors explicitly reference the individual prisoner and the circumstances surrounding the offense and sentencing, facts which are obviously not available to the BOP prior to taking custody of the prisoner. *See Levine*, 455 F.3d at 86; *see also* Gertner Mem. at 2–3 (discussing specifically the deprivation of a judges' "important tool" in sentencing).

The Respondent also relies on *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) to support the BOP's authority to "exercise[ ] categorical discretion." Muniz Mem. at 7. In *Lopez*, the Supreme Court upheld a BOP rule categorically excluding nonviolent offenders, whose crimes involved firearms, from reductions of sentences after rehabilitation. *Lopez*, 531 U.S. at 232–34, 121 S.Ct. 714. The rule was promulgated pursuant to 28 U.S.C. § 3621(e)(2)(B) granting the BOP the discretion to reduce a nonviolent offender's sentence by up to one year after successful completion of a substance abuse program. *Id.* The statute at issue in *Lopez* stated, "[t]he period a prisoner . . . remains in custody . . . *may* be reduced by the [BOP]" (emphasis added). 28 U.S.C. 3621(e)(2)(B). There were no limitations or considerations in the statutory provision. *Lopez*, 531 U.S. at 241, 121 S.Ct. 714 (interpreting use of "may" to impose no limitations). The Supreme Court held that

9. It should also be noted that Judge Fuentes' dissent in *Woodall* contemplates only mid-sentence transfers, ignoring that the primary mandate of Section 3621(b) requires the BOP to make the original placement as well—an exercise of authority that also requires consideration of the placement factors. *See Woodall*, 432 F.3d at 251–52 (Fuentes, J. dissenting); *Fults*, 442 F.3d at 1093 (Riley, J.

dissenting) (adopting Judge Fuentes' reasoning); *Bullock*, No. 06–40147, at 8 (assuming, *arguendo*, but expressing doubt that mid-term transfer ought be analyzed the same as an initial placement).

The statute itself states that transfers and placements are to be considered "having regard for the same matters." 28 U.S.C. § 3621(b).

this exercise of discretion was well within the authority granted by Congress in the statute. *Id.* at 244, 121 S.Ct. 714. The BOP has the discretion to reduce sentences but no obligation to do so, nor any obligation to satisfy particular criteria in the exercise of that discretion. *Id.* at 241–42, 121 S.Ct. 714 ("Congress has not identified any further circumstance in which the [BOP] must grant the reduction, or is forbidden to do so.").

Respondent argues that this deference should extend to Section 3621(b) as well. Muniz Mem. at 7–8, 12, 17. It is true that, just as with Section 3621(e)(2)(B), the BOP has the discretion to place or not place any inmate in "any available . . . institution." Textually, however, Section 3621(b) does place a further constraint on that discretion by requiring that the BOP consider the five placement factors. This exercise of categorical rule-making attempts to reify an assessment—one without reference to the placement factors—that the BOP simply cannot make. *Cf. Lopez*, 531 U.S. at 241–42, 121 S.Ct. 714 (observing that plaintiff's request for individualized determination has no textual basis in the statute). In contrast, the rule promulgated in *Lopez* was in accordance with the unlimited discretion granted by the statute. *Id.*

Respondent, and others, have also pointed to dictum in *Lopez* that indicates that even despite the distinction made above, the *Lopez* rule would still apply. Muniz Mem. at 8; *Goldings*, 383 F.3d at 33–34 (Howard, J. concurring). The *Lopez* Court stated that "even if a statutory scheme requires individualized determinations, . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability." *Id.*

at 243–44, 121 S.Ct. 714 (internal quotations omitted) (indicating that such individualized determinations were not required under the statutory section at issue in that case). Were there no mandatory factors specified in the statute, this statement would arguably apply to the current case. *See Levine*, 455 F.3d at 81 (acknowledging that without placement factors Section 3621(b) gives "unguided discretion."). *See generally* Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L.Rev. 1249 (2006) (criticizing judicial confusion of dicta and holdings).[10] The BOP, however, is not required simply to make an individualized determination; it is required to consider specific factors that are not, by their definition, "generally applicable." *See* 28 U.S.C. § 3621(b)(2)(4) (factors—circumstances of the offense, history of the prisoner, and statement of sentencing court—that are not generally applicable).

■ There is no general restriction on an agency creating categorical rules pursuant to a grant of statutory authority. *Lopez*, 531 U.S. at 243–44, 121 S.Ct. 714. The rule must not, however, systematize an action that the agency could not take in any particular instance. Here, the action that the BOP may not take is to consider an inmate placement without reference to the factors in Section 3621(b). This does not require the BOP to actually make any particular placement decision, but it does invalidate the portions of 28 C.F.R. §§ 570.20 and 570.21 that allow the BOP to circumvent these considerations.

### 2. Exclusion of CCC as Place of Imprisonment

■ In the alternative, the BOP claims that it may categorically exclude CCCs

---

**10.** Judge Leval observes that courts are less apt to engage in the same exacting level of analysis when pronouncing dictum as opposed to a holding. Leval, *Dicta, supra,* at 1255; cf. *Bullock,* No. 06–40147, at 10 ("If *Lopez* means what it says—and this Court must assume that it does—something else is required.").

from the list of "available penal and correctional facilit[ies]." Muniz Mem. at 9–11. There is nothing in the statute expressly granting the discretion to define penal and correctional facilities. *See* 28 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of prisoner's imprisonment. The [BOP] may designate any available penal or correctional facility. . . ."). The statute does give the BOP the authority to determine if a facility is "appropriate and suitable" after it considers the placement factors. *See Goldings*, 383 F.3d at 26 (establishing that the question is whether CCC is a penal or a correctional facility). The relevant question is whether Congress has adequately defined this phrase. *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter.") Just as the BOP cannot extend its discretion categorically to exclude *every* inmate from CCC placement, it also may not extend its discretion in order to redefine the term "penal and correctional facility" if there already exists a coherent congressional definition.

Respondent contends that because Congress did not enumerate in Section 3621(b) what qualifies as an available facility, there does not exist an adequate definition, and the BOP must establish one as the agency charged with administering the law. Muniz Mem. at 10. Were it ambiguous whether CCCs were contemplated by Congress, the BOP might well appropriately exercise this discretion. *See* Gertner Mem. at 20 ("No such limitation on BOP's discretion is apparent on the face of § 3621(b).."). There is ample historical evidence, however, that CCCs have been considered penal or correctional facilities by Congress, the courts, *and* the BOP since at least 1965, when CCCs were expressly added to list of possible placement facilities. *Iacaboni*, 251 F.Supp.2d at 1026 (discussing the history of CCC placement and relevant statutes).[11] Further, the BOP *continues* to consider CCCs to be penal or correctional facilities in other contexts. Gertner Mem. at 26 (discussing implementation of Section 3624(c) end-of-sentence transitions as including both home confinement and CCC placement); *Goldings*, 383 F.3d at 26–27 ("If . . . a CCC may be a place of imprisonment during the last ten percent of a . . . term of imprisonment, it would be incongruous to conclude that the same CCC may not be a place of imprisonment during any portion of the first ninety percent of that term."). As above, this does not mandate that the BOP select a CCC in any particular case, merely that it remain on the list of possible available facilities.

### F. Certification to the Court of Appeals

█ This issue cries out for authoritative, prompt, precedential resolution in the First Circuit. The judges in this District are divided; the inmates at FMC–Devens are apparently all apprised of this issue and form pleadings circulate freely among them, producing repetitive, time consuming, and only marginally productive litigation. What is more, habeas litigation is unfortunately slow, *Kane v. Winn*, 319 F.Supp.2d 162, 217 n. 87 (D.Mass.2004). *See generally* Ephraim Margolin, *When Federal Courts Misplace Your Writ and Fail to Rule*, The Champion, Nov. 2006, at 26, and certain of these inmates stand to

---

11. Judge Ponsor engages in a lengthy, and persuasive, discussion of all possible arguments against considering CCCs as penal or correctional facilities under the existing statutory and regulatory framework, most of which are not raised by the Respondent's arguments in its response here. *See Iacaboni*, 251 F.Supp.2d at 1024–35; *see also* Gertner Mem. at 19–34 (engaging in similar discussion and referencing Judge Ponsor's analysis).

lose individual rights while these cases wend their ways through the courts.

In this case, moreover, the relevant administrative agency, the BOP, has a legitimate and important role in interpreting and enforcing its organic statutory framework. It is clear that there exists a tangible, and presumably good faith, disagreement between certain of the district judges and the BOP, both branches having co-equal powers of statutory interpretation, absent precedential guidance. *See Lopez,* 531 U.S. at 237, 239–40, 121 S.Ct. 714 (discussing the BOP's authority to apply statutory framework). The Court of Appeals alone has the power to settle this disagreement by permitting an expedited appeal pursuant to United States Code Title 28, Section 1292(b) and ruling on this case before it, too, is rendered moot.

Such a decision will resolve the matter without further expenditure of valuable judicial resources. *See Milbert v. Bison Labs.,* 260 F.2d 431, 433–35 (3d Cir.1958) (highlighting the importance of circumventing high cost to litigants and courts).

Under Section 1292(b), this Court is empowered to indicate in writing when it feels that an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the other may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Such indication is an invitation to the litigant to appeal the order to the Court of Appeals within ten days. *Id.* The Court of Appeals may, at its discretion, permit such appeal. *Id.* The petitions addressed here recommend themselves for such an expedited appeals process for rea-

sons of justice and the efficient expenditure of judicial resources. The question of the BOP's continuing interpretation of its statutory authority begs for final resolution in this Circuit.

There is no doubt that the BOP's statutory interpretation is a "controlling question of law." It is the sole issue in this case and all others like it. It is discrete and warrants but a limited expanse of analysis. *See Camacho v. Puerto Rico Ports Auth.,* 369 F.3d 570, 571 (1st Cir. 2004) (describing interlocutory question as "discrete and important"). The determination whether the BOP has the authority to evaluate prisoners without consideration of the placement factors will provide definitive answers for both the BOP and its inmates. *See id.* at 573 (discussing benefits of prompt resolution of discrete question).

Additionally, a final decision would "materially advance the ultimate termination" of litigation. These cases have the unique characteristic that they often become moot too quickly to complete the process of appeals and thereby acquire precedential weight from the Court of Appeals. Each petitioner who prevails in this district court will get an evaluation from the BOP, some may be released to a CCC and, even if the BOP wishes to appeal, these cases become moot. The BOP can, therefore, continue to frustrate the dozens of other prisoners seeking an evaluation by pointing to the absence of decision by the Court of Appeals in this Circuit.[12] Such an administrative decision would determine the fate of each of the more than two dozen identical petitions pending in the district.

---

12. The United States Attorney's office has ceased opposing these petitions before judges that have ruled against the BOP. They have *not,* however, begun undertaking the inevitable evaluations of their own volition and instead stubbornly wait for an order from the court before each evaluation will be done. *See, e.g.,* Letter from United States Attorney to Judge Saris, in *Barber v. Winn,* No. 06–40229 [Doc. No. 3].

This "ultimate termination" requirement is designed to operate as a floodgate against extensive interlocutory appeals. *See id.* at 433 (quoting congressional committee reports on purpose of the statute's limitations). The statute is to be used sparingly—only when a final determination by the Court of Appeals would encourage the expeditious completion of otherwise protracted litigation. *See id.; In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1010 n. 1 (1st Cir.1988) (discussing rare use of statute where "circumstances [are] sufficiently out of the ordinary"). Certification of these two cases is well-suited to achieve this end. Further litigation of this question in this district court will only be an exercise in redundancy. There *are* no other issues to be decided in these cases. The only way to avoid this judicial inefficiency is to obtain a decision from the Court of Appeals that would eliminate the prisoners' point of disagreement or provide a rule to which the BOP may be held accountable.

To satisfy the requirement that there be "substantial ground for a difference of opinion," this Court points to the disagreement within the District, already highlighted above. This issue is "not settled by controlling authority." *McGillicuddy v. Clements,* 746 F.2d 76, 76 n. 1 (1st Cir. 1984).

Respondent has the option to appeal this decision according to the normal course of appellate procedure. At the hearing on October 31, 2006, Respondent indicated a desire and willingness to appeal the order in the *Muniz* case, in particular, because there is a chance that Petitioner will *not* be sent to a CCC by the time such an appeal is completed. This Court is offer-ing Respondent a chance to affirm this expression of good faith by expediting the appeal process in these cases by up to fifty days.[13]

## III. CONCLUSION

Every inmate placement by the BOP is subject to an evaluation considering all five of the placement factors specified in Section 3621(b). Because the existing regulations preclude consideration of all factors, Petitioners have not received the individualized placement assessment that Congress intended.

As previously stated, there are now more than two dozen identical pending habeas petitions against this Respondent, requesting a good faith evaluation of their placement. Respondent's failure to provide these evaluations of each inmate violates the words and intent of Congress. He must now undertake these evaluations in accordance with law.

This Court follows Judge Saris's direction in *Putnam* and ORDERS "that within ten calendar days of this order, the BOP reconsider [Petitioners'] CCC placement in good faith in accordance with the standards employed at FMC–Devens prior to December 2002 and without consideration" of the new regulations.[14] An affidavit shall be filed with the Court demonstrating compliance.

Accordingly, the Petitions [06–40162–WGY, Doc. No. 1; 06–40173–WGY, Doc. No. 1] are ALLOWED. Respondent's motions to dismiss are DENIED.

Moreover, the Court CERTIFIES its resolution of these two cases to the United

---

13. Ordinary appellate procedure for a case involving the United States as a party requires that notice of appeal be filed within sixty days. *See* Fed. R.App. P. 4(a)(1)(B).

14. *Putnam,* 441 F.Supp.2d at 259.

States Court of Appeals for the First Circuit pursuant to 28 U.S.C. § 1292(b).

SO ORDERED AND SO CERTIFIED.